1   Matthew D. Mellen, (SBN: 233350)
    Jessica Galletta (SBN: 281179)
2   Eunji Cho (SBN: 286710)
    MELLEN LAW FIRM
3   411 Borel Avenue, Suite 230
    San Mateo, California 94402
4   Telephone:  (650) 638-0120
    Facsimile:  (650) 638-0125
5
    Attorneys for Plaintiff,
6   ROBERT QUINTERO

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10  ROBERT QUINTERO, an individual,        Case No.: 3:13-CV-04937-JSC

11              Plaintiff,                 [Assigned to the Hon. Jacqueline S. Corley]

12       vs.                               **OPPOSITION TO DEFENDANT'S**
                                           **MOTION TO DISMISS PLAINTIFF'S**
13  WELLS FARGO BANK, N.A., SUCCESSOR      **COMPLAINT**
    BY MERGER TO WACHOVIA MORTGAGE,
14  FSB FORMERLY KNOWN AS WORLD            Date:      January 16, 2014
    SAVINGS BANK, FSB; a business entity; and  Time:      9:00 a.m.
15  DOES 1 through 50, inclusive,          Ctrm:      F (15th Floor)

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………………………1

I.   STATEMENT OF FACTS…………………………………………………………2

II.  DEFENDANT'S ENTIRE MOTION SHOULD BE OVERRULED AS IT
     CONSTITUTES AN ABUSE OF THE FRCP…………………………………………3

III. LEGAL ARGUMENT……………………………………………………………4

     A.   Legal Standard…………………………………………………………4

     B.   Plaintiff's Claims Are Not Preempted by HOLA ………………………5

     C.   Defendant Cannot Simultaneously Avail Itself of a Law Which It Claims is
          Preempted by HOLA……………………………………………………...…7

     D.   Plaintiff Has Sufficiently Pleaded a Cause of Action for Violation of California
          Civil Code § 2923.5……………………………………………………..8

     E.   Plaintiff Has Sufficiently Pleaded a Cause of Action for Violation of California
          Civil Code § 2923.6……………………………………………………10

     F.   Plaintiff Has Sufficiently Pleaded a Cause of Action for Violation of California
          Civil Code § 2923.7……………………………………………………12

     G.   Defendant Cannot Show Compliance with the National Mortgage Settlement and
          Therefore Is Not Protected Under the Safe Harbor Provisions of Civil Code §
          2924.12……………………………………………………………14

     H.   Plaintiff Has Sufficiently Pleaded a Cause of Action for a Violation of Business
          and Professions Code § 17200, *et seq*……………………………………14

          1.   Plaintiff Has Standing to Bring a UCL Claim……………………15

          2.   Plaintiff Sufficiently Pleaded an Underlying Claim………………...15

     I.   Tender is Not a Doctrine of Standing to Challenge a Pre-Sale Foreclosure ……15

IV.  CONCLUSION………………………………………………………...17

1

## TABLE OF AUTHORITIES

2

**Cases**

3

Abdallah v. United Sav. Bank, 43 Cal.App.4[th] 1101 (1996)………………………………..16

4

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)……………………………………………..5

5

Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir. 1990)……………………5

6

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007)……………………………4, 5

7

Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996……………………………………………4

8

Conley v. Gibson, 355 U.S. 41, 47 (1957)……………………………………………………5

9

FCPI Re-Hab 01 v. E & G Invs. 207 Cal.App.3d 1018, 1022 (CA 1989)……………………16, 17

10

Foman v. Davis, 371 U.S. 178, 182 (1962)…………………………………………………..7

11

Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122 (9th Cir. 2009)……………………15

12

Jolley v. Chase Home Finance, 213 Cal. App. 4th 872, 904 (Cal. App. 1st 2013)……………7, 12

13

Karlsen v Am.Sav. & Loan Ass'n, 15 Cal.App.3d 112, 121 (CA 1971)………………………..16

14

Mabry v. Superior Court, 185 Cal.App.4[th]208, 212 (Cal. App. 4th 2010)……………………10, 15

15

Ortiz v. Wells Fargo Bank, N.A., 10-cv-4812-RS-2011 WL 2952979, at *3 (N.D. Cal. May 27,

16

2011)……………………………………………………………………………………6

17

Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998)………………………………………..4

18

Sacchi v. Mortgage Electronic Registration.  See 2011 U.S. Dist. LEXIS 68007………………..16

19

Schneider v. California DOC, 151 F.3d 1194, 1196 (9th Cir. 1998)………………………………5

20

Silvas v. ETrade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008)……………………………5

21

Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)……………………………4

22

Susilo v. Wells Fargo Bank, N.A., 796 F.Supp.2d 1177, 1185 (C.D. Cal 2011)………………5-6

23

U.S. v. Bank of America (D.C. 2012) 1:12-cv-00361-RMC……………………………………14

24

25

26

27

28

ii

**Statutes**

12 U.S.C. § 1461……………………………………………………………………..5

12 C.F.R. § 560.2(c)(6)…………………………………………………………….6

Cal. Civ. Code § 2920.5…………………………………………………………….7

Cal. Civ. Code § 2923……………………………………………………………...7

Cal. Civ. Code 2923.5…………………………………………………………...8, 15

Cal. Civ. Code 2923.6…………………………………………………...7, 10, 11, 12, 15

Cal. Civ. Code § 2923.7…………………………………………………………12, 15

Cal. Civ. Code§  2924………………………………………………………………..7

Cal. Bus. & Prof. § 17200…………………………………………………………15

**Other Authorities**

FRCP Rule 12(b)……………………………………………………………….3, 4

CAND Local Rule 7-7……………………………………………………………..4

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1

## **INTRODUCTION**

In the case at hand, Robert Quintero was awaiting a loan modification when Wells Fargo unlawfully initiated foreclosure proceedings in direct violation of the newly enacted Homeowners' Bill of Rights.  In the face of this black-and-white statutory violation, Wells Fargo brings an entirely meritless Motion to Dismiss.

Defendant's Motion to Dismiss should be entirely overruled because it is both meritless and because it constitutes a late filing and an intentional attempt to circumvent the Federal Rules of Civil Procedure.  Plaintiff will address the motion's lack of merit fully below.  However, before reaching the merits, Plaintiff would like to call the Court's attention to Defendant's misconduct.

Plaintiff initiated his lawsuit by filing the action in San Mateo County Superior Court on September 23, 2013.  Defendant removed the action to this District on October 24, 2013, making Defendant's first responsive pleading, either Answer or Motion to Dismiss, due within seven days of removal.   Defendant in fact filed its responsive pleading on the seventh day.  The motion was poorly drafted, advancing undeveloped arguments with little or no supporting legal authority.  It also relied on exhibits in a Request for Judicial Notice which it failed to file.  Plaintiff opposed the Motion within the required time.  However, rather than file a Reply to Plaintiff's Opposition, Wells Fargo *withdrew their motion* and filed another Motion to Dismiss the same day.  This second motion to dismiss, which is now before the Court, is therefore late.  What's worse, this is an intentional circumvention of the Federal Rules of Civil Procedure, which prejudices Plaintiff.  Plaintiff has now had to oppose two motions to dismiss and Defendant has had the benefit of having taken two bites at the apple.  Defendant should not be rewarded for these tactics.  Imagine the burden on both the Courts and litigants if this conduct is encouraged.  As the authorities below will demonstrate, the Court has discretion to completely overrule the Motion to Dismiss on these grounds alone, and Plaintiff asks that the Court do so.  The motion is otherwise without merit as set forth below.

//

//

1

1

## I.     STATEMENT OF FACTS

2

On or around October 23, 2006, Plaintiff ROBERT QUINTERO (hereinafter "Plaintiff")

3

refinanced his mortgage loan for the property located at 190 Beach Park Blvd., Foster City,

4

California 94404 (hereinafter the "Property") with World Savings Bank. Complaint at ¶ 8. To

5

secure the financing, Plaintiff executed a Deed of Trust and Promissory Note in favor of World

6

Savings Bank. Id. Subsequently, Defendant Wells Fargo became successor in interest to World

7

Savings Bank. Complaint at ¶ 9.

8

On or around May 6, 2010, Wachovia Mortgage, FSB, f.k.a. World Savings Bank, FSB

9

caused to be recorded a Notice of Default in the San Mateo County Recorder's Office. Complaint

10

at ¶ 10. On or around July 15, 2010, Plaintiff paid $23,677.67 to reinstate his loan and thereafter

11

on July 22, 2010, the Notice of Default dated May 6, 2010 was rescinded. Id.

12

On or around August 26, 2011, Defendant caused to be recorded a Notice of Default in the

13

San Mateo County Recorder's Office. Complaint at ¶ 11. The Declaration of due diligence by

14

Vanessa Perez attached to the Notice of Default was executed on May 5, 2010. Id. Plaintiff

15

contacted Defendant in or around November 2011 to request a loan modification. Complaint at ¶

16

12. All through 2012, Plaintiff repeatedly sent in documents requested by Defendant for the loan

17

modification application, however, each time Plaintiff received a letter stating that another

18

document was missing although Plaintiff sent in all of the requested documents. Id.

19

Then on or around August 9, 2012, Plaintiff was assigned Deshon Ramsey as his Wells

20

Fargo Home Mortgage home preservation specialist. Complaint at ¶ 13. The frustrating process

21

of repeatedly submitting documents continued into 2013. Complaint at ¶ 14. On January 2,

22

2013, January 8, 2013, and January 10, 2013, Plaintiff received letters from Deshon Ramsey

23

stating that he received the documentation Plaintiff sent, however, on or around January 14, 2013,

24

Plaintiff received yet another letter stating that WELLS FARGO did not receive all the requested

25

documentations. Id. In that letter, Deshon Ramsey wrote that only the "Most recent quarterly or

26

year-to-date profit and loss statement (P&L)" was missing. Complaint at ¶ 15. Plaintiff

27

immediately sent in the requested statement, and received confirmation letter on January 18, 2013

28

that his documentation was received by WELLS FARGO and was under review. Id

In or around February 2013, Plaintiff was assigned a new single point of contact, Monique Vera.  Complaint at ¶ 16.  Although Plaintiff submitted the one missing document according to Deshon Ramsey, on or around February 21, 2013, Plaintiff received a letter from Monique Vera stating that another document, "Other – Explanation Letter – Reason for Not Filing" was missing.  Complaint at ¶ 17.  Plaintiff again immediately submitted the requested documentation.  Id.

On or around April 2, 2013, Plaintiff received a letter from WELLS FARGO, denying his modification application based on the reason that Defendant was unable to reduce Plaintiff's principal and interest payment by 10% or more.  Complaint at ¶ 18.  Plaintiff appealed the decision, which was confirmed in May 2013.  Complaint at ¶ 19.  Noticing that the calculation used in the modification application had the incorrect gross monthly income of $12,030.69, Plaintiff wrote a letter to WELLS FARGO on May 22, 2013 stating that his income has changed.  Complaint at ¶ 18-19.  Thereafter, on or around June 17, 2013, Plaintiff faxed another modification application with the correct gross monthly income of about $7,400.00 a month as well as all other requested documents.  Complaint at ¶ 20.  After submitting the application, Plaintiff unsuccessfully attempted to contact his so-called single point of contact, Monique Vera, to discuss his loan modification application.  Complaint at ¶ 21.  Plaintiff left her many messages to return his call, but Monique Vera never answered or returned his calls.  Id.  Not hearing a response from Monique Vera, Plaintiff spoke to another WELLS FARGO representative, who verified that they have received the modification application.  Complaint at ¶ 22.  The representative told Plaintiff that Monique Vera was his single point of contact and that she will get back to him with the result of the modification application.  Id.  To his shock, Plaintiff received a Notice of Trustee's Sale in September 2013 although he had yet to receive the decision regarding his new modification application.  Complaint at ¶ 23.

## II.   DEFENDANT'S ENTIRE MOTION SHOULD BE OVERRULED AS IT CONSTITUTES AN ABUSE OF THE FRCP.

Unless extended by stipulation or court order, a defendant's answer on a removed action is due within seven days of service of removal from State Court.  However, before a defendant files an Answer to a Complaint, it may file a Rule 12(b) motion for a failure to state a claim upon

3

which relief can be granted. In the Northern District, following the filing of a 12(b) Motion to Dismiss, the non-moving party's opposition, if any, is due fourteen days following filing of the Motion to Dismiss, and a Reply is due, if any, seven days following service of the Opposition. CAND L.R. 7-7. However, a moving party may withdraw *its motion within the time for filing and serving a reply*. CAND L.R. 7-7(e) (emphasis added). Otherwise, the Court may proceed to decide the motion. (Id.)

In the case at hand, Defendant conduct is a violation of both the Federal Rules of Civil Procedure and Northern District's Local Rules. Rather than file a Reply to Plaintiff's Opposition which addressed Defendant's arguments and asked that the Court disregard all arguments which relied upon a non-existent Request for Judicial Notice, Defendant withdrew its motion and re-filed a new motion *the same day*. Not only does this action make the motion late under the Federal Rules dictating response deadlines, it violated the Northern District's Local Rules regarding the time within which a moving party can withdraw a motion. Accordingly, Plaintiff asks that the Court overrule the Motion in its entirety and order Defendant to Answer Plaintiff's Complaint.

## III.    LEGAL ARGUMENT IN OPPOSITION TO MOTION TO DISMISS

### A.    Legal Standard

The courts have long held a strong policy in favor of determining disputes on the basis of their merits and not on technicalities of pleading rules. Foman v. Davis, 371 U.S. 178, 182 (1962). As such, dismissal is reserved for such cases where it is clear that a cause of action cannot be saved by any amendment. Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996).

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To survive a motion to dismiss, a plaintiff need only plead facts sufficient to "state a claim for relief that is plausible on its fact." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

4

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

A dismissal is only appropriate where the plaintiff fails to state a claim supportable by any cognizable legal theory. Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only contain "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957) (abrogated on other grounds by Bell Atlantic Corporation v. Twombly, 550 U.S. at 563 (2007)). For these reasons, dismissal without leave to amend is improper unless it is clear that a complaint could not be saved by any amendment. Schneider v. California DOC, 151 F.3d 1194, 1196 (9th Cir. 1998).

In this case, Plaintiff pleaded sufficient facts to allege the nature and extent of the wrongful conduct committed by Defendant. These factual allegations are thereafter incorporated by reference into each applicable Cause of Action. Each Cause of Action identifies its particular elements and the allegations made against Defendant. As such, Plaintiff has sufficiently pleaded allegations to place Defendant on notice of the claims against them and the grounds upon which those claims rest. Because of this, the motion to dismiss should be denied or, alternatively, Plaintiff should be granted leave to amend.

### B.      Plaintiff's Claims Are Not Preempted by HOLA.

Defendant erroneously moves to dismiss Plaintiff's Complaint on the grounds that Plaintiff's claims for relief are preempted by the federal Home Owners' Loan Act ("HOLA") (12 U.S.C. § 1461). MTD at p. 3, ln. 13-14. Defendant's argument fails, however, for the reasons stated herein.

Whether a cause of action is preempted by HOLA is determined by a two-step process. The first step is to determine whether the regulation in question is expressly preempted by the regulations set forth by the Offices of Thrift Supervision ("OTS"). Silvas v. ETrade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008). If the regulation is expressly preempted, the analysis ends there; the law is preempted. Id. If the regulation is not expressly preempted, the next question is whether the law affects lending. Susilo v. Wells Fargo Bank, N.A., 796 F.Supp.2d

5

1177, 1185 (C.D. Cal 2011).  However, state laws that (1) furthers a vital state interest and (2) either only has an "incidental affect" on the lending operations of Federal Savings Associations or is not otherwise contrary to the purposes expressed are not preempted by HOLA.  12 C.F.R. § 560.2(c)(6).

First, as stated in Osorio v. Wells Fargo Bank 12-cv-02645-RS, 2012 WL 1909335, at *2 (N.D. Cal. May 24, 2012), "[a] lender cannot on the one hand rely on California law as the foundation for its right to conduct a non-juridical foreclosure while on the other hand ignore any restrictions or procedural requirements that are part of that process under California law."  Plaintiff's claims for violation of California's non-judicial foreclosure requirements is not preempted, as HOLA does not address the right to foreclose on real property as security for a loan, and the OTS regulations do not mention foreclosure as a type of state law preempted by HOLA.  In fact, "[t]here is no federal or nationally-uniform standard for creating and enforcing security interests in real property.  Were it not for the fact that California chose to permit non-judicial foreclosure in the first place, the lender would not have that power."  Ortiz v. Wells Fargo Bank, N.A., 10-cv-4812-RS-2011 WL 2952979, at *3 (N.D. Cal. May 27, 2011).  Thus, Defendant cannot simultaneously rely on California's non-judicial foreclosure statutes and simultaneously presume to be exempted from the recently enacted HBOR regulating non-judicial foreclosures.

California's Homeowner's Bill of Rights are not preempted by HOLA.  Under HOLA, state laws that (1) furthers a vital state interest and (2) either only has an "incidental affect" on the lending operations of Federal savings associations or is not otherwise contrary to the purposes expressed are not preempted by HOLA.  12 C.F.R. § 560.2(c)(6).  In enacting the Homeowners Bill of Rights (HBOR), the Legislature found:

> "[i]t is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options.  These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to

the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy."

Cal. Civ. Code § 2920.5, Section 1, subpart (b). To that effect, the California Legislature enacted the HBOR "which attempts over time to eliminate the practice of dual tracking and to ameliorate its effects, by requiring lenders and loan servicers to designate a "single point of contact" for each borrower in default." Jolley v. Chase Home Finance, 213 Cal. App. 4th 872, 904 (Cal. App. 1st 2013); see also Cal. Civ. Code 2923.6 (dual tracking), 2923.7 (single point of contact). The purpose of HOLA is to protect consumers and to "enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of HOLA." 12 C.F.R. § 560.2(a) (emphasis added). It is not likely that Congress would find that California HBOR is anything but a "best practice" operation in bank lending and operations. Accordingly, Defendant's motion to dismiss Plaintiff's claims on preemption grounds should be denied.

### C. Defendant Cannot Simultaneously Avail Itself of a Law Which It Claims is Preempted by HOLA.

Defendant cannot simultaneously avail itself of a law which it claims is preempted by HOLA. Defendant almost entirely relies upon the argument that the HBOR is preempted by HOLA, but what Defendant fails to recognize is that it availed itself of the very scheme from which it now seeks protection. In fact, in California, lenders may foreclose on mortgages in default using either a judicial or non-judicial foreclosure process. However, in order to pursue a non-judicial foreclosure in California, a lender must abide by the non-judicial foreclosure law, i.e. California Civil Code sections 2923 and 2924, et seq. Similarly, Defendant contractually agreed to foreclose pursuant to California's non-judicial foreclosure statute when it acquired a loan agreement which is governed by California's non-judicial foreclosure. Though Defendant correctly cites to the Governing Law Section of the Deed of Trust, it conveniently omits the portion which states California law governs the Deed of Trust to the extent that federal law does not govern. Plaintiff knows of no, and Defendant cites to no, federal non-judicial foreclosure law. Therefore, California's statutory scheme governs. In addition, Defendant chose to take advantage

7

of the non-judicial foreclosure process under California law when it initiated foreclosure proceedings against Plaintiff, by filing a Notice of Default, Notice of Trustee Sale, etc. Defendant alleges compliance with California Civil Code § 2923.5 because the Notice of Default in the case includes a declaration which tracks the language of § 2923.5(b).  MTD at p. 12, ln. 23-24.  Why even bother to comply with § 2923.5 if Defendant's position is that § 2923.5 is preempted by HOLA?  Defendant cannot pick and choose which of the California statutes regulating non-judicial foreclosures.  Under Defendant's logic, the entire non-judicial foreclosure process would be eviscerated.  This is a classic case of Defendant trying to prove too much.

> **D.    Plaintiff Has Sufficiently Pleaded a Cause of Action for Violation of California Civil Code § 2923.5.**

Plaintiff has sufficiently pleaded Defendant's violation of Cal. Civil Code § 2923.5. Specifically, Plaintiff claims that Defendant violated § 2923.5 by failing to contact Plaintiff to discuss foreclosure prevention options prior to recording the Notice of Default on August 26, 2011 ("August 26, 2011 Notice of Default").  Complaint at ¶ 28.  Defendant attempts to defeat Plaintiff's cause of action on four erroneous grounds.  First, Defendant argues that the Notice of Default includes a declaration stating compliance with the statute.  MTD at p. 12, ln. 23.  Second, Defendant alleges that Plaintiff admits there has been plenty of contact with WELLS FARGO. MTD at p. 13, ln. 7-9.  Third, Defendant states that Plaintiff cannot recover damages for a violation of Civil Code § 2923.5 as the only remedy is a postponement of the sale.  MTD at p. 13, ln. 12-13.  Lastly, Defendant argues that Plaintiff cannot use a "hyper-technical" defects as a means to further postpone the trustee's sale.  MTD at p. 13, ln. 18-19.  For the reasons stated below, Defendant's Motion to Dismiss as to this cause of action must be overruled.

First, Defendant bases its motion to dismiss on the grounds that the Notice of Default includes a declaration stating compliance with § 2923.5.  MTD at p. 12, ln. 23.  What Defendant conveniently ignores is the circumstances surrounding the declaration.  Prior to the Notice of Default at issue, on or around May 6, 2010, Wachovia Mortgage, FSB, f.k.a. World Savings Bank, FSB caused to be recorded a Notice of Default in the San Mateo County Recorder's Office. Complaint at ¶ 10.  On or around July 15, 2010, Plaintiff paid $23,677.67 to reinstate his loan and

thereafter on July 22, 2010, the Notice of Default dated May 6, 2010 was rescinded. Id.  The declaration of due diligence by Vanessa Perez attached to the August 26, 2011 Notice of Default was executed on May 5, 2010, which was a day before the previous Notice of Default was rescinded.  Complaint at ¶ 11.  As the previous Notice of Default was rescinded after the declaration at issue was executed, the declaration cannot apply to the August 26, 2011 Notice of Default and Defendant failed to perform due diligence prior to recording the August 26, 2011 Notice of Default.

In addition, allowing Defendant to avoid the statutory requirement to contact a borrower to discuss foreclosure prevention options prior to recording the Notice of Default with an outdated declaration would negate the purpose of Homeowner's Bill of Rights.  In adopting the HBOR, California Legislature recognized the growing problem of foreclosures and enacted HBOR in order to encourage avoiding foreclosures.  Defendant attempts to argue that it has met § 2923.5 requirement simply by including a declaration stating compliance with the statute, with no concern of when the attempt to contact Plaintiff was made.  MTD at p. 12, ln. 23-25.  In fact, Defendant next erroneously argues that Plaintiff admits there has been plenty of contact with WELLS FARGO by citing to the Complaint in which Plaintiff stated that he communicated with Defendant in or around November 2011.  MTD at p. 13, ln. 8-10; Complaint at ¶ 12.  This argument has no merit to support compliance with § 2923.5 as the communications took place in November 2011 while the declaration was executed more than a year prior on May 5, 2010.  Complaint at ¶ 11-12.  The declaration was executed during a time in which Plaintiff reinstated his loan and his lender rescinded the previous Notice of Default on May 6, 2010.  Complaint at ¶ 10.  Also, according to the August 26, 2011 Notice of Default, Plaintiff was in default due to failure to pay the monthly payment due March 15, 2011 and subsequent installments due thereafter.  Therefore, at the time Defendant executed the declaration at issue, Plaintiff was current on his loan.

Defendant's other arguments are just as unavailing.  Specifically, Defendant argues that Plaintiff can only seek a postponement of the sale for violation of Civil Code § 2923.5, however, this argument should be brought as a Motion to Strike.  MTD at p. 13, ln. 16-17.  Lastly,

9

Defendant argues that Plaintiff cannot use a "hyper-technical" defects as a means to further postpone the trustee's sale because Plaintiff cannot explain how he was prejudiced.  MTD at p. 13, ln. 18-19.  Contrary to Defendant's argument, however, Plaintiff specifically alleged that as a result of Defendant's conduct, Plaintiff has suffered irreparable injury from the imminent loss of his Property.  Complaint at ¶ 31.  As stated previously, Defendant cannot take advantage of non-judicial foreclosures in California, and at the same time, attempt to ignore procedural requirements that are part of that process under California law.

Further, Defendant's argument fails to recognize that compliance with § 2923.5 is necessarily an individualized process, and a plaintiff can challenge the contents of the declaration for compliance with the statute.  See Mabry v. Superior Court, 185 Cal.App.4th 208, 212 (Cal. App. 4th 2010).  The question of compliance with § 2923.5 is necessarily a question of fact inappropriate for disposition at this stage in the proceedings. Therefore, Defendant's Motion to Dismiss must be overruled or Plaintiff be granted leave to amend.

**E.     Plaintiff Has Sufficiently Pleaded a Cause of Action for Violation of California Civil Code § 2923.6.**

California Civil Code § 2923.6 provides that

> "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending…until…the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period…has expired."

Cal. Civ. Code § 2923.6.  In the case at hand, Plaintiff alleges that Defendant violated Cal. Civil Code § 2923.6 when it caused a Notice of Trustee's Sale to be recorded while Plaintiff's first lien loan modification application was pending.  Complaint at ¶ 38.  Defendant attempts to defeat Plaintiff's allegation on two grounds.  First, Defendant argues that Plaintiff is not eligible for another loan modification review because he has already received a loan modification.  MTD at p. 14, ln. 19-20.  Next, Defendant unconvincingly contends that Plaintiff has not complied with the statutory requirements of § 2923.6 by failing to document a material change in Plaintiff's financial circumstances since the previous application.  MTD at p. 14, ln. 26-28.  For the reasons

10

stated herein, each assertion fails.

First and foremost, even if Plaintiff has received a prior loan modification, however, Plaintiff is entitled to a loan modification review. California Civil Code § 2923.6(g) provides that a mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated … unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." In the case at hand, there was a material change in Plaintiff's financial circumstances and Plaintiff wrote a letter to Defendant on May 22, 2013 stating that his income had materially changed from the last time he was considered for a modification. Complaint at ¶ 19, 40. In addition, Plaintiff also sent in a profit and loss statement for the first four months of 2013 to show the change in income. Complaint at ¶ 40. Therefore, Plaintiff was eligible for another loan modification review. In addition, whether Plaintiff was in fact provided a prior modification and is entitled to a subsequent review is a question of fact inappropriate for disposition at this stage of the proceedings.

Next, Defendant erroneously argues that Plaintiff fails to allege any facts showing a material change in financial circumstances that was documented and submitted to WELLS FARGO because the material change was already presented to WELLS FARGO in the appeal. MTD at p. 16, ln. 2-9. Defendant misconstrues Plaintiff's allegation. Contrary to Defendant's argument, Plaintiff submitted the material change in his income in a letter to WELLS FARGO on May 22, 2013 after his appeal on the previous denial was confirmed, not as a part of the appeal. Complaint at ¶ 19. Therefore, Plaintiff was eligible for another loan modification review when he submitted a new modification application with the correct gross monthly income on June 17, 2013. Complaint at ¶ 20. Lastly, Defendant bases its motion to dismiss on the argument that Plaintiff fails to allege that the application in June 2013 was "complete". MTD at p. 16, ln. 19-20. In support of this argument, Defendant states that Plaintiff's allegation that Wells Fargo employees stated that WELLS FARGO had "received the modification application" and would "get back to him with the result of the" application does not establish that WELLS FARGO

11

deemed the application complete.  MTD at p. 16, ln. 23-26.  Pursuant to Civil Code § 2923.6(h), an application is deemed "complete" when a borrower has supplied all documents required by the mortgage servicer within specified reasonable timeframes.  California Civil Code § 2923.6(h). The statute does not require a lender to deem the application complete.  In addition, Plaintiff specifically alleged that his first lien modification application was deemed complete when Plaintiff faxed in all the documents for a modification application, which was confirmed by a WELLS FARGO representative.  Complaint at ¶ 20, 22, 43.  Thus, Plaintiff had a complete loan modification application pending when Defendant caused to be recorded a Notice of Trustee's Sale in or around September 2012.  Complaint at ¶ 44.  Therefore, Plaintiff has complied with the statute and Defendant's motion on this ground must be overruled.  However, should the Court deem these allegations insufficient, Plaintiff should be granted leave to amend.

**F.**     **Plaintiff Has Sufficiently Pleaded a Cause of Action for Violation of California Civil Code § 2923.7.**

California Civil Code section 2923.7, provides that when a lender receives an application for a foreclosure prevention alternative, the lender is required to "promptly establish a single point of contact" who is responsible for aiding a borrower in the loan modification process.  Cal. Civ. Code § 2923.7.  The single point of contact is responsible for the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options;

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application;

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative; and

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any; and

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code § 2923.7(b). The purpose of this section is to eliminate the practice of dual

12

tracking and to ameliorate its effects, by requiring lenders and loan servicers to designate a "single point of contact" for each borrower in default. Jolley v. Chase Home Finance, LLC, 213 Cal. App. 4th 872, 904 (citing Assem. Bill No. 278, § 7 (prohibiting dual tracking by higher volume lenders and mortgage servicers)]; Assem. Bill No. 278, § 9 (single point of contact)]; Assem. Bill No. 278, § 15 [adding Civ. Code, § 2924.11 (prohibiting dual tracking by all lenders and mortgage servicers)).

Plaintiff alleges that Defendant violated this provision by failing to assign him a single point of contact that would be responsible for aiding Plaintiff in the loan modification process. Complaint at ¶ 51-54. Defendant incorrectly attempts to avoid liability by arguing that borrowers must affirmatively request a single point of contact. MTD at p. 17, ln. 7-8. However, as Defendant agrees, the statute states: "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact." MTD at p. 17, ln. 9-12; Cal. Civ. Code § 2923.7(a). A loan modification application is a request for a foreclosure prevention alternative, thereby entitling Plaintiff to a single point of contact under the HBOR. Defendant cites to no authority for its suggestion that a borrower has an affirmative duty to request a single point of contact and, in fact, the plain language of the statute imposed no such duty.

Defendant next attempts to defeat Plaintiff's claims by ignoring the essence of the allegations and arguing, instead, that Plaintiff's claims fails because he admits he did have a single point of contact. MTD at p. 17, ln. 17-18. Defendant apparently wants to ignore Plaintiff's specific allegations and the entire essence of his lawsuit. However, this does not defeat the fact that Plaintiff clearly alleged the failure of his single point of contact to communicate with Plaintiff regarding his loan modification application. Complaint at ¶ 21-22, 51-54. Plaintiff's claims against Defendant are not for its failure to assign the single point of contact but, rather, as a result of that individual's failure to perform the duties delineated by Civil Code § 2923.7. Also, Defendant's argument that § 2923.7 does not mandate that "communicate" means via the telephone is confusing at best. MTD at p. 17, ln. 21-22. Plaintiff's allegation is not that Defendant violated § 2923.7 because Plaintiff's single point of contact failed to communicate via

13

telephone, but that the single point of contact failed to communicate in any means of communication, including via telephone. Further, communication via telephone was a means of communication provided by Defendant to Plaintiff. Had Defendant provided an email address to communicate with the single point of contact, Plaintiff also would have pursued that means of communication. Therefore, Defendant's arguments fail and, accordingly, must be overruled. However, should the Court deem these allegations insufficient, Plaintiff should be granted leave to amend.

**G.  Defendant Cannot Show Compliance with the National Mortgage Settlement and Therefore Is Not Protected Under the Safe Harbor Provisions of Civil Code § 2924.12.**

Defendant erroneously argues that it is insulated from liability under the HBOR because it is a signatory to the National Mortgage Settlement ("NMS") and Plaintiff's Complaint is devoid an allegation that Defendant failed to comply with the NMS. MTD at p. 18, ln. 10-13. This is ridiculous! Plaintiff alleges that Defendant violated Cal. Civil Code § 2923.6 when it caused a Notice of Trustee's Sale to be recorded while Plaintiff's first lien loan modification application was pending. Complaint at ¶ 38. This is the epitome of a dual tracking allegation. The NMS also restricts dual tracking by stating that "[i]f a borrower has not already been referred to foreclosure, Servicer shall not refer an eligible borrower's account to foreclosure while the borrower's complete application for any loan modification program is pending" U.S. v. Bank of America (D.C. 2012) 1:12-cv-00361-RMC # 14 ("National Mortgage Settlement Consent Judgment) p. A-17, Section IV, Subpart B.1. Therefore, Defendant cannot show compliance with the NMS and thus is not insulated by the Safe Harbor Provision of Cal. Civil Code § 2924.12. Nor has Defendant made any attempt to indicate how it is in compliance with the NMS and instead attempts to rely on the conclusory allegation that it is in compliance with the NMS without pointing to a single provision that it is complying with or that Plaintiff has failed to prove. Therefore, Defendant's arguments fail and, accordingly, must be overruled.

**H.  Plaintiff Has Sufficiently Pleaded a Cause of Action for a Violation of Business and Professions Code § 17200, *et seq*.**

A UCL claim may be tethered to violations and practices that specifically prescribed by

any other law.'" <u>Hauk v. JP Morgan Chase Bank USA</u>, 552 F.3d 1114, 1122 (9th Cir. 2009), Plaintiff's UCL claim is tethered to Defendant's violations of California law as set forth in the Complaint. Complaint at ¶ 57-60. Defendant incorrectly objects to Plaintiff's cause of action for Violation of Business and Profession's Code § 17200 ("UCL Violation") *et seq* on the grounds that Plaintiff (1) lacks standing to bring the claim and (2) Plaintiff fails to allege a viable underlying claim. MTD at p. 19, ln. 26-27, 8-10. For the reasons stated herein, each of Defendant's arguments fails.

### 1.   Plaintiff Has Standing to Bring a UCL Claim.

Defendant incorrectly states that Plaintiff's claim fails for a lack of standing. MTD at p. 20, ln. 12-13. Defendant apparently wants to ignore Plaintiff's specific allegations and the entire essence of his lawsuit. Plaintiff has alleged that Defendant's conduct has caused Plaintiff actual damages, including but not limited to the imminent loss of his Property. Complaint at ¶ 31, 46, 55. Therefore, Defendant's motion to dismiss on this ground must be overruled.

### 2.   Plaintiff Sufficiently Pleaded an Underlying Claim.

For the reasons stated herein, Plaintiff has alleged multiple violations of specific statutory provisions which support his UCL claim. Specifically, Plaintiff has asserted causes of action for Violation of Cal Civ. Code §§§ 2923.5, 2923.6, and 2923.7. Complaint Generally. Accordingly, the Court should deny Defendant's motion to dismiss with respect to Plaintiff's claim for violations of California Business and Professions Code § 17200. However, should the Court deem these allegations insufficient, Plaintiff should be granted leave to amend.

### I.   Tender is Not a Doctrine of Standing to Challenge a Pre-Sale Foreclosure.

Defendant incorrectly bases its Motion to Dismiss Plaintiff's Complaint based on the doctrine of tender. More specifically, Defendant contends that Plaintiff cannot obtain injunctive relief because Plaintiff has not alleged tender. MTD at p. 21, ln. 4-5. First and foremost, Plaintiff's allegations are for violations of the Homeowners Bill of Rights, a new statutory scheme enacted *after* the holdings of the cases upon which Defendant relies. Certainly, had the Legislature required tender in order for a borrower to invoke the provisions of the HBOR, it would have mandated as much. Therefore, the exclusion of the tender doctrine from the very

15

specific provisions of the HBOR is a clear indication of the Legislature's intention that a borrower need not tender in order to seek the statute's protections.

In addition, there is a vast misunderstanding, or an intentional misunderstanding, by defense counsel regarding the tender doctrine. Tender is not, as some say, implicated in every foreclosure related cause of action. Consider, for instance, Civil Code §2923.5. This cause of action allows a plaintiff to attack a Notice of Default and have it rescinded due to a bank's failure to comply with its pre-foreclosure requirements. Mabry v. Superior Court 185 Cal.App.4th 208 (CA 2010). Clearly, tender was not required by the Mabry Court.

Tender is a doctrine of equity applicable only to equitable causes of action. Courts have held that in order to unwind a completed foreclosure sale, one must do equity in order to receive equity. Karlsen v Am.Sav. & Loan Ass'n, 15 Cal.App.3d 112, 121 (CA 1971). The rationale for the tender requirement is that "if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to plaintiffs." FCPI Re-Hab 01 v. E & G Invs. 207 Cal.App.3d 1018, 1022 (CA 1989). The tender doctrine is inapplicable to the case at hand, however, as Plaintiff is not seeking to receive equity by way of overturning an unlawful foreclosure sale. In fact, in the case at hand, no sale has yet occurred! So, although the tender doctrine certainly has a place within wrongful foreclosure litigation, it is inapplicable in the case at hand.

Tender is not a doctrine of standing necessary to challenge a wrongful foreclosure, as held in the recent case of Sacchi v. Mortgage Electronic Registration. See 2011 U.S. Dist. LEXIS 68007, 28 (holding that it would be "grossly inequitable" to require Plaintiffs to tender the balance of their mortgage before allowing them to challenge their wrongful foreclosure). In fact, the legal authority upon which Defendant relies on to make this argument demonstrates this assertion. All the cases upon which Defendant relies concern challenges to completed foreclosure sales based on irregularities in the sale procedure. Abdallah v. United Sav. Bank, 43 Cal.App.4th 1101 (1996). The courts in those cases held that, in order to challenge a sale, a post-foreclosure plaintiff must tender the amounts owed. The rationale for the tender requirement is that "if plaintiffs could not have redeemed the property had the sale procedures been proper, any

16

irregularities in the sale did not result in damages to plaintiffs."  <u>FCPI</u> at 1022.  These cases are inapposite to the case at hand, however, because they address post-foreclosure challenges to completed sales.  Thus, the rationale behind the tender doctrine is inapplicable to the case at hand and does not prevent Plaintiff from litigating his pre-sale lawsuit.

**IV.**      <u>**CONCLUSION**</u>

Based on the foregoing arguments, Plaintiff respectfully requests that the Motion to Dismiss Plaintiff's Complaint by Defendant be denied.  Should the Court deem these allegations insufficient, Plaintiff respectfully requests leave to amend.

DATED: December 11, 2013                          Respectfully submitted,

                                                  MELLEN LAW FIRM


                                                   _/s/ Jessica Galletta_
                                                  Jessica Galletta, Esq.
                                                  Attorney for Plaintiff
                                                  ROBERT QUINTERO