United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO QUINTERO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>　　　　　Defendants. | Case No.: C-13-04937 JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART WELLS FARGO'S MOTION TO DISMISS** |

Now pending before the Court in this mortgage foreclosure case is Defendant Wells Fargo's motion to dismiss the Complaint. (Dkt. No. 11.) After carefully considering the parties' submissions, and having had the benefit or oral argument on January 16, 2014, the Court GRANTS the motion in part and DENIES the motion in part.

## ALLEGATIONS OF THE COMPLAINT

In 2006, Plaintiff refinanced his mortgage loan for the property located at 190 Beach Park Blvd., Foster City, California with World Savings Bank. On May 6, 2010, Wachovia Mortgage, formerly known as World Savings Bank, caused to be recorded a notice of default. A few months

1    later, Plaintiff paid $23,677.67 to reinstate his loan.  The May 6 notice of default was thereafter

2    rescinded on July 22, 2010.

3          On August 26, 2011, Wells Fargo, the successor in interest, caused to be recorded a second

4    notice of default.  The declaration of due diligence attached to the notice was executed on May 5,

5    2010.  A few months later, Plaintiff contacted Wells Fargo and requested a loan modification.  The

6    loan modification process with Wells Fargo continued from that time into 2013, with Wells Fargo

7    requesting various documents from Plaintiff that were apparently missing from Plaintiff's loan

8    modification application.

9          On April 2, 2013, Plaintiff received a letter from Wells Fargo informing him that his

10   application was denied.  The proposed modification payment was calculated using $12,030.69 as

11   Plaintiff's gross monthly income.  "Plaintiff appealed the decision, which was confirmed in May

12   2013.  Noticing that the calculation used in the modification application had the incorrect gross

13   monthly income, Plaintiff wrote a letter to Wells Fargo on May 22, 2013 stating that his income ha[d]

14   changed." (Dkt. No. 1 ¶ 19.)

15         Approximately a month later, Plaintiff submitted another modification application with "the

16   correct gross monthly income" of about $7,400, as well as all other requested documents.  (*Id.* at ¶

17   20.)  After submitting the new application, Plaintiff unsuccessfully attempted to contact his "so-

18   called" single point of contract, Monique Vera, to discuss his application.  (*Id.* at ¶ 21.)  Plaintiff left

19   her many messages to return his calls, but Ms. Vera never answered or returned his calls.

20         Not hearing a response from Ms. Vera, Plaintiff spoke with another Wells Fargo

21   representative, who verified that Wells Fargo had received the modification application.  The

22   representative also told Plaintiff that Ms. Vera was his single point of contact and that she would get

23   back to him with the result of the modification application.

24         In September 2013, Plaintiff received a notice of trustee's sale, though he had yet to receive

25   the decision regarding his new modification application.

## LEGAL STANDARD

27         A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough

28   facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

1    570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than
2    a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
3    (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the
4    court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light
5    most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d
6    1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory
7    or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside*
8    *Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see*
9    *also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a
10   claim on the basis of a dispositive issue of law").

11   Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under
12   which a party is only required to make "a short and plain statement of the claim showing that the
13   pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation
14   of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.
15   at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a
16   motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*,
17   652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply
18   recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to
19   give fair notice and to enable the opposing party to defend itself effectively."). The court must be able
20   to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556
21   U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-
22   specific task that requires the reviewing court to draw on its judicial experience and common sense."
23   *Id.* at 663-64.

24   If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request
25   to amend the pleading was made, unless it determines that the pleading could not possibly be cured by
26   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal
27   quotation marks and citations omitted).
28   //

3

**DISCUSSION**

Plaintiff alleges the following four causes of action against Wells Fargo: 1) violation of former California Civil Code § 2923.5; 2) violation of California Civil Code § 2923.6; 3) violation of California Civil Code § 2923.7; and 4) violation of California Business & Professions Code § 17200.

### A.  Wells Fargo's Unauthorized Filing of a Second Motion to Dismiss

Plaintiff objects to Wells Fargo's filing of a second motion to dismiss while its first motion to dismiss was pending before the Court. Civil Local Rule 7-7(e) allows for withdrawal of a motion, but only if such withdrawal is made "[w]ithin the time for filing and serving the reply." Wells Fargo's withdrawal of its first motion to dismiss was made six days after its reply was due, and thus the withdrawal was improper. The Court, however, will excuse the late withdrawal and decide the second motion to dismiss given that there will be no prejudice to Plaintiff from doing so. The two motions do not materially differ and Plaintiff has fully responded to the second motion.

### B.  HOLA Preemption

Wells Fargo moves to dismiss Plaintiff's claims for violation of California's non-judicial foreclosure laws as preempted under the Home Owners' Loan Act ("HOLA"). As discussed below, the Court concludes that Plaintiff's Section 2923.5 claim is not preempted. Further, as discussed at oral argument, the Court orders supplemental briefing concerning HOLA preemption of Plaintiff's Sections 2923.6 and 2923.7 claims.

#### 1.  Background law

Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008). HOLA and the Office of Thrift Supervision ("OTS") regulations that interpret it were a "radical and comprehensive response to the inadequacies of the existing state system" and "so pervasive as to leave no room for state regulatory control." *Id.* (internal quotation marks omitted). The OTS regulations explain that OTS "occupies the entire field of lending regulation for federal savings associations," and establish a framework for determining whether a state law is preempted. *See* 12 C.F.R. § 560.2(a), (b).

4

1    OTS enumerates certain types of state laws that are preempted, including "state laws
2 purporting to impose requirements regarding . . . [p]rocessing, origination, servicing, sale or purchase
3 of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10).  If the state law—"as
4 applied"—is one of the enumerated types, "the analysis will end there; the law is preempted."  *Silvas*,
5 514 F.3d at 1005.  If it is not, then the court is to determine "whether the law affects lending."  *Id.*
6 (internal quotation marks omitted).  If it does, the law is presumed to be preempted, subject to the
7 exceptions of section 560.2(c).  *Id.*  That section provides:

> (c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
>
> (1) Contract and commercial law;
>
> (2) Real property law;
>
> (3) Homestead laws specified in 12 U.S.C. § 1462a(f);
>
> (4) Tort law;
>
> (5) Criminal law; and
>
> (6) Any other law that OTS, upon review, finds:
>
> (i) Furthers a vital state interest; and
>
> (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c).  Courts are to focus not on the nature of the cause of action, but on the "functional effect upon lending operations of maintaining the cause of action."  *See Naulty v. GreenPoint Mortg. Funding, Inc.*, 2009 WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009).  "Any doubt should be resolved in favor of preemption."  *Silvas*, 514 F.3d at 1005.

Following the mortgage crisis, Congress altered significantly the preemption landscape.  The Dodd–Frank Wall Street Reform Act and Consumer Protection Act of 2010 ("Dodd-Frank"), 12 U.S.C. § 5412, provides that HOLA no longer occupies the field in any area of state law and that

preemption under HOLA is governed by the conflict preemption standards applicable to national banks. *See Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4742815, at *3 n.2 (N.D. Cal. Oct. 3, 2012). The parties do not discuss Dodd-Frank and the impact, if any, it may have on the preemption analysis in this case. The Court notes that while the majority of the wrongful conduct alleged in the Complaint occurred after July 2011—the latest Dodd-Frank took effect—the underlying loan at issue is Plaintiff's 2006 refinance. Other courts have looked to the date of loan origination in determining whether to apply Dodd-Frank's new preemption standard. *See, e.g., Henning v. Wachovia Mortg., FSB*, --- F.Supp.2d ----, 2013 WL 5229837, at *5 (D.Mass. Sept. 17, 2013) ("Because the loans at issue originated before either date, [] the appropriate preemption standard to apply to Henning's claims is that extant prior to the effective date of Dodd–Frank."); *Brown v. Wells Fargo Bank, N.A.*, 869 F. Supp. 2d 51, 56 (D.D.C. 2012) ("Because the Act was passed after plaintiff received the loan at issue, the changes are not relevant to the issues before the Court."). The Court, however, questions the utility of using the date of loan origination in a case, such as this, where there are no loan origination issues and the matter concerns compliance with post-Dodd-Frank foreclosure laws, such as California's Homeowners' Bill of Rights ("HBOR"). For the purposes of this Order, which, for the reasons discussed below, examines only whether HOLA preempts former Section 2923.5, the Court assumes field preemption applies.

### 2. Application to Plaintiff's claims

#### a. Section 2923.5

While Wells Fargo is correct that there are numerous courts in California that have found claims under former Section 2923.5 preempted under HOLA, this Court, which has never directly addressed the question, disagrees with those courts. Rather, this Court joins the minority of other courts that have found that Section 2923.5 claims are not preempted by HOLA. *See Osorio v. Wells Fargo Bank*, 2012 WL 1909335, at *1-2 (N.D. Cal. May 24, 2012).

Pursuant to the first step of the *Silvas* preemption analysis, Wells Fargo's written submissions do not clearly identify which paragraphs of Section 560.2(b) preempt Plaintiff's Section 2923.5 claim. Virtually all courts that have found Section 2923.5 preempted have done so based on the conclusion that it "falls squarely within the scope of HOLA's Section 560.2(b)(10), which deals with the

1  '[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in,
2  mortgages.'" *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1033, 2010 WL
3  4348127, at *10 (N.D. Cal. Oct. 27, 2010); *see also Williams v. Wells Fargo Bank, NA*, 2013 WL
4  2047000, at *3-4 (C.D. Cal. May 13, 2013) (following *Nguyen* and noting that it is perhaps the "most
5  compelling" case that has found Section 2923.5 preempted).  This conclusion, and the basis of
6  authority used by subsequent courts, appears to trace back to *Murillo v. Aurora Loan Servs., LLC*,
7  2009 WL 2160579, at *4 (N.D. Cal. July 17, 2009), where the court stated simply: "As applied,
8  Plaintiffs' § 2923.5 claim concerns the processing and servicing of Plaintiffs' mortgage.  As such, the
9  Court finds that Plaintiffs' 2923.5 claim is preempted under HOLA."  However, neither Wells Fargo
10 nor the cases upon which it relies ever explain why Section 2923.5's requirements fall within
11 Paragraph 10.

12      This Court concludes that Plaintiff's Section 2923.5 claim does not fall within Paragraph 10.
13 As relevant here, former Section 2923.5 provides that "a mortgagee, trustee, beneficiary, or authorized
14 agent may not file a notice of default . . . until 30 days after initial contact is made as required by
15 paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision
16 (g)."  Cal. Civ. Code § 2923.5(a)(1).  Under paragraph (2), the authorized agent must contact the
17 borrower in person or by telephone "in order to assess the borrower's financial situation and explore
18 options for the borrower to avoid foreclosure."  Cal. Civ. Code § 2923.5(a)(2).  Under subdivision (g),
19 "a notice of default may be filed . . . when a mortgagee, beneficiary, or authorized agent has not
20 contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to
21 contact the borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized
22 agent."  Cal. Civ. Code § 2923.5(g).  "Due diligence" entails attempting to contact the borrower by
23 mail and phone a specified number of times.  *Id.*  In essence, these requirements are prerequisites to
24 an entity's use of California's non-judicial foreclosure procedure.  As the *Osorio* court persuasively
25 reasoned, once an entity avails itself of California's non-judicial foreclosure laws, it cannot simply
26 pick-and-choose which of those laws' requirements it will follow:

27  > A lender's ability to resort to non-judicial foreclosure in this state arises from the fact
28  > that the California Legislature has enacted laws permitting the use of deeds of trust
    > containing the power of sale and setting out the procedure for such foreclosures—it is

7

not a lender's right in many states, and certainly does not derive from HOLA. A lender cannot on the one hand rely on California law as the foundation for its right to conduct a non-judicial foreclosure, while on the other hand ignore any restrictions or procedural requirements that are part of that process under California law.

*Osorio*, 2012 WL 1909335, at *2.

Further, the Court fails to see how Plaintiff's Section 2923.5 claim imposes requirements on "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10)—unless simply putting any restriction on how and when an entity may foreclose is considered imposing a requirement on those actions, a position no authority supports. As interpreted by the California Court of Appeals in *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 232 (2010), Section 2923.5's requirements are "narrowly construed in order to avoid crossing the line from state foreclosure law into federally preempted loan servicing." Thus, Section 2923.5's mandates to "assess" the borrower's financial situation and "explore" alternatives to foreclosure are "simple" and do not require the lender to provide a loan modification, to consider a whole new loan application, or to take detailed loan application information over the phone or in person. *Mabry*, 185 Cal. App. 4th at 231-32. Finally, as noted in *Ortiz v. Wells Fargo Bank, N.A.*, 2011 WL 4952979, at *3 (N.D. Cal. May 27, 2011), "there is no mention of the process of foreclosure [in Paragraph 10], which as a California court has observed, 'has traditionally been a matter of state real property law.'" (Quoting *Mabry*, 185 Cal. App. 4th at 230).

At the hearing, Wells Fargo also identified Paragraph 4 as a basis for preemption. That paragraph preempts state laws purporting to impose requirements regarding:

> The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

12 C.F.R. § 560.2(b)(4). The Court disagrees with Wells Fargo that simply because former Section 2923.5 requires the foreclosing entity to contact the borrower and "explore" alternatives to foreclosure that Section 2923.5 can be classified as a law imposing requirements regarding "adjustments to . . . payments due." The law requires no adjustment to payments due, and requiring a simple contact with

8

the borrower before filing a notice of default is an innocuous prerequisite to exercising the California-conferred power of non-judicial foreclosure.

Turning to the second *Silvas* step, a presumption of preemption will arise if the state law "affects" lending. *Silvas*, 514 F.3d at 100. Although Wells Fargo does not address the second *Silvas* step, the Court will address it briefly here. As noted in *Ortiz*, "[w]hether state laws governing the foreclosure process are seen as 'affecting' lending depends on how broadly that term is construed." 2011 WL 4952979, at *3. Because Section 2923.5, at least as applied in this case, does not in any way inhibit lenders from extending credit, "it is far from self-evident that even a presumption of preemption should arise." *Id.*

Even assuming that the law affects lending, the third *Silvas* step requires examining whether the state law nonetheless is not preempted because it 1) is one of the listed type of state laws in subsection (c) that only incidentally affect lending operations, or 2) is "otherwise consistent with the purposes" of the preemption provisions of Section 560.2(a). *See Silvas*, 514 F.3d at 1005; 12 C.F.R. § 560.2(c). Subsection (c) specifically lists "contract law" and "real property law" as types of laws that are not preempted to the extent they only incidentally affect lending operations. Section 2923.5 is arguably properly characterized as both types of laws. *See Ortiz*, 2011 WL 4952979, at *3 n.2 ("California's statutes regulating foreclosure, codified in the state's Civil Code, are properly characterized as 'contract law,' because they govern the permissibility of power of sale provisions in deeds of trust, and likely also fall within 'real property law.'"). Further, to the extent Section 2923.5 affects lending, the Court fails to see how such an effect would be more than incidental. Section 2923.5 as applied in this case is also not preempted because it is otherwise consistent with the purposes of subsection (a):

> OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS

9

> intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.

12 C.F.R. § 560.2(a). Section 2923.5 does not otherwise disrupt Wells Fargo's use of best practices in the mortgage foreclosure context since there is no federal or nationally-uniform standard for creating and enforcing security interests in real property; rather, Wells Fargo's power of non-judicial foreclosure is a creation of California law that exists only because California created it. *See Osorio*, 2012 WL 1909335, at *2 ("Were it not for the fact that California chose to permit non-judicial foreclosures in the first place, the lender would not have that power.").

Wells Fargo's motion to dismiss Plaintiff's Section 2923.5 claim based on HOLA preemption is accordingly DENIED.

### b.     Claims under the Homeowners' Bill of Rights

Wells Fargo also argues that Plaintiff's claims under the recently enacted Homeowners' Bill of Rights ("HBOR") are preempted by 12 C.F.R. § 560.2(b)(4) and (10). While the Court acknowledges Wells Fargo's arguments—particularly the noticeable increase in an entity's substantive and procedural requirements under HBOR prior to conducting a foreclosure—and recognizes that other courts have found HBOR claims preempted by HOLA, *see, e.g.*, *Marquez v. Wells Fargo Bank, N.A.*, 2013 WL 5141689, at *5 (N.D. Cal. Sept. 13, 2013), the briefing before the Court does not adequately address the issues. Specifically, and as discussed at the hearing, the parties have not addressed whether the post-Dodd-Frank conflict preemption analysis, rather than the pre-Dodd-Frank field preemption analysis, applies to Plaintiff's HBOR claims. And, if the conflict preemption analysis applies, whether the HBOR claims are preempted under the narrower standard. At the hearing, Wells Fargo represented that it wished to provide a fuller briefing of the preemption issue. In light of this representation, the Court DENIES, without prejudice, Wells Fargo's motion to dismiss Plaintiff's HBOR claims.

## C.     Violation of Section 2923.5

Because the Court concludes that former Section 2923.5 is not preempted, the Court will address whether Plaintiff otherwise states a claim for violation of that statute. As noted above, former Section 2923.5 provides that "a mortgagee, trustee, beneficiary, or authorized agent may not file a

notice of default . . . until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g)." Cal. Civ. Code § 2923.5(a)(1). Under paragraph (2), the authorized agent must contact the borrower in person or by telephone to discuss the borrower's financial situation and assess whether there is a way to avoid foreclosure. Cal. Civ. Code § 2923.5(a)(2). Under subdivision (g), "a notice of default may be filed . . . when a mortgagee, beneficiary, or authorized agent has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent." Cal. Civ. Code § 2923.5(g).

Plaintiff alleges that Wells Fargo violated Section 2923.5 by filing the August 26, 2011 notice of default without first contacting or completing the due diligence requirements in subsection (g). These allegations are sufficient to state a claim under Section 2923.5. The Court notes, however, that the only relief under Section 2923.5 is a postponement of the foreclosure sale so that Wells Fargo may comply with the statute. *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 214 (2010). Thus, Plaintiff's request for damages, which is made in addition to his request for a postponement of the foreclosure sale, is not available. The Court accordingly DENIES Wells Fargo's motion to dismiss the claim, but GRANTS the motion to the extent Plaintiff alleges a right to damages.[1]

Wells Fargo's arguments to the contrary ignore Plaintiff's allegations. Specifically, Wells Fargo's assertion that the May 5, 2010 declaration attached to the 2011 notice of default satisfies former Section 2923.5 ignores that Plaintiff alleges that that declaration was used to support Wells Fargo's Section 2923.5 compliance in regards to the *May 6, 2010* notice of default. (Dkt. No. 1 ¶¶ 10, 30.) Because Plaintiff alleges that he paid $23,677.67 to reinstate his loan following the 2010 notice of default, Plaintiff's subsequent default on his loan for the second time required Wells Fargo to complete former Section 2923.5's requirements anew prior to filing the 2011 notice of default. The Complaint adequately alleges that it did not do so.

---

[1] Wells Fargo argues that Plaintiff is also barred from the injunctive relief he seeks because he has not alleged a valid tender. (*See* Dkt. No. 11 at 20.) The Court rejects this argument as the only authority Wells Fargo cites concerns a plaintiff's requirement to allege tender when seeking to set aside a sale. As both parties acknowledge, the property in question here has not yet been sold so there is no sale to set aside.

11

1     While the Court is aware that Plaintiff and Wells Fargo, following the 2011 notice of default,
2  have engaged in rather lengthy efforts to help Plaintiff avoid foreclosure—the exact purpose of
3  Section 2923.5's notification requirements—Wells Fargo cites no authority for the proposition that
4  such communication subsequent to the filing of a notice of default excuses a party's violation of
5  Section 2923.5.  Further, Wells Fargo has cited no case where a court has required a plaintiff to allege
6  prejudice as an element of a Section 2923.5 claim.  Wells Fargo's purported authority is not on point
7  because those cases concerned either a plaintiff's attempt to use a procedural irregularity to set aside a
8  foreclosure sale, *see Knapp v. Doherty*, 123 Cal. App. 4th 76, 93-94 (2004) (requiring showing of
9  prejudice from failure to timely serve notice of sale where plaintiff sought to set aside a foreclosure
10 sale); *see also Davenport v. Litton Loan Servicing*, 725 F. Supp. 2d 862, 877 (N.D. Cal. 2010)
11 ("When attacking a non-judicial foreclosure sale, a borrower must overcome a presumption of
12 propriety.  She may do this by proving an improper procedure occurred and by demonstrating
13 resulting prejudice." (citations omitted)), or involved negligence claims, *see Lawther v. OneWest*
14 *Bank*, 2010 WL 4936797, at *5 (N.D. Cal. Nov. 30, 2010) (holding that "a mode of analysis that
15 focuses on prejudice is particularly useful" where plaintiff alleged a negligence per se claim based on
16 a theory that defendants were required to adhere to the statutory requirements of California Civil Code
17 Sections 2924 and 2934a).

**D.     Violation of Section 17200**

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200 et seq.  By proscribing any "unlawful" business practice, the UCL "borrows violations" of other state and federal laws and makes them independently actionable. *Cel-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999).  A practice may "be deemed unfair or deceptive" under the UCL "even if it is not unlawful." *Id.*  An unfair business practice is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (internal quotation marks omitted).  Whether a business practice is unfair "involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Family Home & Fin. Ctr., Inc. v. Fed.*

12

1   *Home Loan Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008).  "An employer's business practices
2   concerning its employees" are within the scope of the prohibition against unfair competition.
3   *Wilkinson v. Times Mirror Corp.*, 215 Cal. App. 3d 1034, 1052 (1989).  "What constitutes 'unfair
4   competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a
5   question of fact . . . ."  *People v. McKale*, 25 Cal. 3d 626, 635 (1979).

6   "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only
7   requires a showing that members of the public 'are likely to be deceived.'"  *Olsen v. Breeze*, 48 Cal.
8   App. 4th 608, 618 (1996).  Although fraud is not a necessary element of a claim under the UCL,
9   where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course
10  of conduct as the basis of that claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in
11  fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)" of the
12  Federal Rules of Civil Procedure.  *Kearns v. Ford Motor, Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).
13  To satisfy Rule 9(b), the plaintiff must include "the who, what, when, where, and how" of the fraud.
14  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  "The plaintiff must set forth
15  what is false or misleading about a statement, and why it is false."  *Decker v. GlenFed, Inc.*, 42 F.3d
16  1541, 1548 (9th Cir. 1994).  A claim for fraud must be "specific enough to give defendants notice of
17  the particular misconduct which is alleged to constitute the fraud charged so that they can defend
18  against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780
19  F.2d 727, 731 (9th Cir. 1985).

20  Plaintiff's Section 17200 claim is tethered to his three other claims in this action.  Because
21  Plaintiff's claim under former Section 2923.5 is the only claim that remains at issue on this motion,
22  the Court will address Plaintiff's UCL claim pursuant to that statute only.

23  Even if Wells Fargo's alleged misconduct pursuant to Section 2923.5 is "unlawful" under the
24  UCL, Plaintiff lacks standing to pursue his claim.  To establish standing under the UCL, a plaintiff
25  must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., *economic*
26  *injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business
27  practice . . . that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337
28  (2011).  Plaintiff has not alleged any economic injury that was caused by Wells Fargo's alleged

13

failure to abide by former Section 2923.5.  Indeed, although the notice of default was filed in 2011, the parties have been in contact regarding alternatives to foreclosure for much of that time.  That Plaintiff did not qualify for loan relief from his default is not the result of Wells Fargo's failure to contact him before filing the notice of default.  Wells Fargo's motion to dismiss Plaintiff's UCL claim is GRANTED to the extent the claim is based on a violation of former Section 2923.5.

## CONCLUSION

Based on the foregoing, the Court DENIES Wells Fargo's motion to dismiss Plaintiff's Section 2923.5 claim, with the exception that it GRANTS the motion to the extent Plaintiff alleges a right to damages under former Section 2923.5.  In addition, the Court GRANTS Wells Fargo's motion to dismiss Plaintiff's UCL claim to the extent it is based on a violation of Section 2923.5.  Finally, in light of Wells Fargo's desire to provide a complete presentation of the preemption issue, the Court DENIES, without prejudice, Wells Fargo's motion to dismiss Plaintiff's HBOR claims as well as Plaintiff's claim under Section 17200 based on HBOR violations.  Upon the filing of the amended complaint, Wells Fargo may file a new motion to dismiss which addresses preemption of the HBOR claims as well as any other 12(b)(6) issues.

Plaintiff shall file his amended complaint within 10 days of the date of this Order.

IT IS SO ORDERED.

Dated: January 17, 2014

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

14